*191 Opinion of the Court.
Harrison, the appellant, charged in his bill, that he had borrowed of the appellee three hundred and fifty dollars, and to secure its payment within one year, had placed in possession of the appellee a negro slave, named Bill, and made a bill of sale for him, absolute on its face; but took an instrument of writing, at the same time, from the appellee, binding him to restore the slave, on the re-payment of the money, with an express understanding and agreement, that the hire of the slave, which was equal to eighty dollars per year, should discharge the interest of the loan ; that after the appellee had thus held Bill some years, a modification of the contract took place, in which the appellee restored Bill, and all writings were cancelled, and an additional loan of fifty dollars was made, and he put into the appellee’s possession another slave, named Sam, and gave an absolute bill of sale for him, but took an instrument of writing from the appellee, to this effect :
“ This is to certify, if Cuthbert Harrison or his heirs shall or do pay me the sum of four hundred dollars, within twelve months from this date, then or in that case, I do oblige myself, my heirs, &c. to deliver to the said Harrison, his heirs, executors, &c. a negro fellow called Sam, bought of him for the sum of four hundred dollars, if the said slave should be alive. As witness my hand and seal, this 25th February 1814.
(Signed) WILFORD LEE, [L. s.]”
That he had offered back the four hundred dollars, and demanded the slave ; but the appellee had refused to restore him. He charges his hire to be worth one hundred dollars per annum, and prays that he may be restored, and the hire of both slaves accounted for, and that the appellee may be compelled to receive the balance of his money, as the whole transaction was usurious, and nothing but a borrowing on one side and lending on the other, by express agreement and full understanding between the parties, and each slave was worth far more at the time, than the sums loaned.
The answer admits the reception of Bill, under an absolute bill of sale, at the price of three hundred and fifty dollars, and the execution of a writing to restore him on the re-payment of the price, and that Bill was *192 restored and Sam taken in his place, at the price of four hundred dollars, and the delivery of the writing for a re-purchase, above recited. But the answer directly and positively denies any borrowing or lending, in case of either slave ; alleges that each was a bona fide sale, and at the value of each boy at the time, and that if the slaves died, they were his loss, and that the instrument was but a privilege to re-purchase, and that the reason why Bill was restored after the time of re-purchase was over, was, that he, the appellee, had discovered that Bill was mortgaged to another individual, and on this discovery, he had applied to the appellant to take back the slave and restore the price, which the appellant could not do, but offered, in lieu of the price of Bill, the negro Sam, provided fifty dollars more were paid for him, which he agreed to reluctantly, preferring his money to the slave Sam. He further alleges, that he was still willing to have taken his money, but none was offered, until three years after the time allowed for the re-purchase was over, after slaves had risen in value.
The circuit court dismissed the bill, and from that decree this appeal is prayed.
The decision of this case involves the difficult inquiry, which frequently presents itself in such transactions, whether it be a mortgage or conditional sale ? We say difficult ; for it is often a question of intention, to be determined from the facts and circumstances in the case. In this cause the following facts are apparent : Three hundred and fifty dollars was the full and fair price for Bill, and four hundred dollars for Sam, at the respective times when the appellee got them. Nothing, therefore, in favor of a mortgage, can be inferred from inadequacy of price ; but rather the contrary.
The subscribing witnesses to the writings, two in number, depose that there was no lending or borrowing, or mortgage, spoken of at the time ; but, on the contrary, a conditional sale, or a privilege of re purchasing only, was expressed by the parties or understood by them. Their testimony is unimpeached, and no witness, acquainted with the original transaction, gives a different account.
To rebut this, the appellant has attempted to show his general indisposition finally to part with his slaves, *193 and has proved that the appellee had in two or three other instances, with strangers to this transaction, furnished loans of money on other slaves thus pledged. And only one witness is adduced, who proves the confessions of the appellee, that he held Bill, before the purchase of Sam, for the use of money loaned.
According to well known principles, confessions compose evidence of a weak character, and when proved by one witness only, ought not to overturn the positive denial of an answer, unless supported by strong circumstances, furnishing strong presumption in its favor. The circumstance of the appellee’s having thus loaned money to others on these terms, is too weak ; especially, when the witnesses depose that these were also conditional sales. And the indisposition of the appellant to part with his slave, is rebutted, by proving that Sam, by an act of rebellion, had given him great offence, which induced him to declare he would sell him, find that he should remain no longer on his premises. There is, however, one circumstance in this case, which is strong enough to repel all others. There was no mutuality in the contract ; no remedy in favor of the appellee to recover his money ; and it is evident from the writing, as well as the testimony of the subscribing witnesses, the appellee was at the first to run the risk of the life of the slave. If he died, the loss fell wholly on the appellee, and the whole contract was thus ended. As this risk was to be borne by him, and there was no sacrifice made by the appellant at the time, and no effort made to regain the slave, until his price had greatly risen, after the hour of repurchase was long expired, we conceive the answer of the appellee is well supported, that it was a conditional sale as to both slaves ; or rather, an absolute sale, with a privilege reserved of re-purchasing, for a limited period ; and consequently, the court below did right in dismissing the bill.
Decree affirmed with costs.